FILED'05 APR 26 11:49USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA                     Crim. No. 05-cr-30026-HO

              Plaintiff,            ORDER

       v.

ROBERT AKIM LEEN, KEITH MARTIN
HULING,

              Defendants.

## Introduction

The superseding indictment charges defendants with
conspiracy and manufacture of 1000 or more marijuana plants.
Defendant Leen filed a motion to suppress evidence seized after
execution of a search warrant on February 19, 2004, at 606
Hitching Post Road, Josephine County, Oregon, and to controvert
statements in the search warrant affidavit. Although it argued
that Leen is not entitled to a hearing pursuant to Franks v.
Delaware, 438 U.S. 154 (1978), the government did not oppose

Leen's request for a hearing to controvert statements in the warrant affidavit. Defendant Huling filed a motion to join in Leen's motion to suppress and controvert. The court presided over an evidentiary hearing on March 16, 2006. The court granted Huling's motion to join, but found that Huling lacks standing to challenge the admissibility of evidence seized at the premises. See Minutes dated March 16, 2006. The motion to suppress and controvert is therefore denied for lack of standing as to defendant Huling. For the reasons that follow, the motion to suppress and controvert is denied on the merits as to defendant Leen.

## Factual Background

### I. Warrant Affidavit

The following facts are gleaned from the warrant affidavit prepared by Josephine County Interagency Narcotics Team (JOINT) Detective Pete Jenista.

On February 3, 2004, JOINT members, including Jenista, executed a search warrant at 4200 Highland Avenue, Grants Pass, Josephine County, Oregon. The location is an automotive business operated by Jamie McEntire and defendant Huling. Officers seized more than 800 marijuana plants and growing equipment. On the evening of February 4, 2004, Deputies Travis Snyder and Tim Cockrum contacted Leen and McEntire outside 4200 Highland Avenue. Leen had driven McEntire to the address, and McEntire had jumped

2 - ORDER

the fence to retrieve his truck.  Snyder and Cockrum observed 50-100 small planting containers in Leen's truck bed.  Snyder conveyed this information to Jenista.

On February 4, 2004, JOINT Detective Mike Vorberg suggested that the person a citizen informant (CI1) had identified only as "Josh," during a prior stolen auto investigation of 4200 Highland Avenue, might be defendant Leen.

Within 9 months prior to February 18, 2004, a confidential informant (CI2) told Jenista that Leen is and for years has been one of the most significant persons involved in the manufacture and delivery of marijuana in Josephine County.  Former JOINT Detective Dave Raymond and other JOINT detectives also related this information to Jenista.  CI2 sought to provide information in exchange for favorable treatment from the District Attorney's office regarding pending felony charges.  CI2 has multiple misdemeanor and felony convictions, but none for crimes impugning veracity.  Jenista made no promises to CI2 and CI2 failed to maintain contact and received no consideration.  Another confidential informant (CI3) told Jenista that Huling had lived at and buried a shipping container on property on Hitching Post Road, and that Huling was growing marijuana there.  CI3 has no criminal history.

Jenista learned from the police computer system that one Jamie MacEntire, phone number 660-6984, reported a burglary at

3 - ORDER

606 Hitching Post Road on December 30, 2002.  Using the computer,
Jenista further determined that Jamie L. McEntire, contacted by
Snyder and Cockrum on February 4, 2004 at 4200 Highland Avenue,
was also associated with phone number 660-6984, and that the
subjects shared the same date of birth.  Jenista concluded that
MacEntire and McEntire are the same person.  Again using the
computer, Jenista ran a "check" on 606 Hitching Post Road and saw
that the listed owner is Joe Cirina.  Jenista decided not to
contact Cirina until just prior to writing a search warrant
affidavit, for fear that Cirina might tip off persons associated
with the property.

On February 17, 2004, Jenista visited 606 Hitching Post
Road.  He observed that a felled tree blocks a northerly driveway
and that a sign reading "Posted No Trespassing Keep Out" is
posted.  A southerly driveway leading uphill to the residence
turns abruptly to the right after leaving the roadway and
parallels the roadway up to the residence.  The area around the
driveway contains many small trees and other brush.  A mailbox
bearing the numbers "606" and name "Reimer" is opposite the
southerly driveway.

Jenista and Deputy Ryan Brown returned to the premises to
speak with Reimer on February 18, 2004, at 11:36AM.  Jenista
noted that the southerly driveway was a single gravel driveway
cut into the hillside, appearing to be approximately 150 feet

4 - ORDER

long.  The officers drove over a chain across the driveway.  The
chain was draped from trees on either side of the driveway and
lowered to the ground.  A sign reading "Posted No Trespassing
Keep Out" was posted on a tree on the east side of the driveway,
approximately 75 feet from Hitching Post Road.  A white Ford
pickup truck registered to Jessica Anne Bunnell was parked next
to the residence.  A large rottweiler dog barked from just inside
the front door, which was comprised of glass panels.

      Jenista and Brown observed instrumentalities of underground
growing operations about the property, including approximately
100 four inch plastic potting containers, seven three gallon
plastic planting containers, a large coil of wire, two five
gallon buckets of white paint, "Professional Growing Mix,"
sections of twelve inch and four inch diameter black plastic
corrugated irrigation pipe, an electric fan, a portable heater,
and a metal grow shield.  Jenista observed no potted plants or
other use of planting containers in plain view at the front of
the residence.

      While standing in the parking area in front of the
residence, Jenista and Brown smelled marijuana apparently
emanating from inside the house, just behind the house, or over
an embankment behind the house.  A steep embankment behind the
residence could clearly be seen from the front of the residence.
A dirt road appeared to travel to the south and then west toward

5 - ORDER

the embankment behind the residence.

Jenista called the District Attorney's Office to advise that he would be securing the scene and returning to the station to apply for a search warrant.  Brown and Jenista waited for the arrival of additional officers to clear and secure the residence and property.  At approximately 12:50PM, Detectives Souza and Valdez arrived.  Jenista went to the front door, knocked loudly and called out to Reimer and Bunnell by name.  He announced that police were coming into the residence.  Jenista opened the front door and the officers entered the residence.  Jenista immediately smelled marijuana and called out to Reimer and Bunnell while the officers cleared the residence.  The officers found drying marijuana and no people.  A sliding glass back door was unlocked. The officers left the residence and closed the door behind them.

The officers followed the road behind the house down the embankment.  Jenista observed fresh footprints leading downhill, but none leading uphill toward the residence.  It had rained significantly earlier in the day.  Partway down the embankment, Jenista looked up toward the residence and saw the ends of four, one-foot black, corrugated irrigation pipes extending from the ground horizontally, in groups of two.  Jenista looked down the embankment and saw toward the bottom of the embankment what appeared to be a reinforced rectangular opening leading into the ground.  Valdez and Jenista inspected the opening and saw that it

6 - ORDER

led to a small vestibule area leading to the open doors of a
buried metal conex container.  Valdez entered the container to
clear it of persons.  Valdez told Jenista that he observed in
plain view approximately 100 green marijuana plants, and the same
brand of climate control mechanism as that located in the
marijuana grow located at 4200 Highland Avenue on February 3,
2004.

     The officers returned to the residence.  Jenista observed a
wooden shed with locked door near the southwest corner of the
residence.  Through a window, he saw a large mat on the floor.
Jenista believed the mat likely concealed the entrance to another
underground grow room.  Jenista checked the corrugated black
irrigation pipes and found that the two to the south functioned
as air intakes, while the two to the north were exit vents.

     Jenista left the premises to prepare a search warrant
affidavit.  Dispatch called Jenista and advised that Reimer was
on the phone requesting a deputy to stand by and keep the peace
in a civil matter.  Jenista responded to the call and contacted
Reimer, who informed him that he no longer lived at 606 Hitching
Post Road, and that the property is owned by Joe Cirina.  Jenista
confirmed Cirina's ownership with county records.  Reimer told
Jenista that the wooden shed and underground shipping containers
were not at the residence when Reimer lived there, Reimer built
the road leading down the embankment, Reimer's fingerprints would

7 - ORDER

not be found in these structures, and no one was scheduled to move in immediately after Reimer moved out in 1999 or 2000.

Cirina told Jenista that Leen entered into a lease option to purchase 606 Hitching Post Road. Cirina furnished Jenista with a copy of the agreement at approximately 4:30PM on February 18, 2004. Cirina told Jenista that Leen told Cirina that Leen planned to use metal shipping containers to store firewood for sale, and for storage. Cirina told Jenista that Leen had mentioned his ex-brother-in-law. Jenista knows Huling to be Leen's former brother-in-law.

II.   Hearing Testimony

The following facts are gleaned from Jenista's hearing testimony.

Before entering the house, Jenista suspected people may be inside. Fences along the south and northwest sides of the property enclose the adjoining properties. The property is approachable by foot from railroad tracks bordering the property on the southeast. Jenista's observations inside the house did not affect his decision to travel down the embankment. Jenista went down the embankment because he observed a road and grow equipment. Jenista connected the property with Leen for the first time upon speaking with Cirina on February 18, 2004. Jenista had probable cause of marijuana growing activity on the premises at approximately 11:40AM on February 18, 2004. Jenista

8 - ORDER

first went behind the residence after backup officers arrived. Entry onto the back deck and into the conex container was part of a protective sweep.

Jenista departed the premises at 1:23PM on February 18, 2004. After returning to the station, he continued to investigate by taking a statement from Reimer, calling the Oregon Medical Marijuana Program, calling Cirina, and calling Leen's bank, after receiving Leen's banking information from Cirina. Jenista worked on the affidavit from roughly 5:00PM on February 18, 2004, until 2:15AM on February 19, 2004. Jenista took a statement from Deputy Snyder at approximately 11:20PM on February 18, 2004.

Jenista concluded that a judge would not be available in the middle of the night, and that there was no basis to execute a search warrant during the night time. At 6:00AM, Jenista met with a deputy district attorney who suggested changes to the warrant affidavit. Jenista made the changes and presented the affidavit to a State of Oregon Circuit Judge at approximately 8:30AM on February 19, 2004. The judge issued a search warrant, which officers executed at approximately 9:07AM on February 19, 2004.

III.  Exhibits

Government exhibit three indicates that the chain over the south driveway and no trespassing sign are located 144 feet up

9 - ORDER

the 274 foot long driveway.   This varies from Jenista's
assessment in his affidavit.

### Discussion

Leen advances the following arguments in support of his
motion to suppress evidence: officers illegally searched
curtilage at 606 Hitching Post Road on February 18, 2004;
observations made during the search of the curtilage must be
excised from the warrant affidavit; entry into the house was an
illegal search; observations made during the search of the house
must be excised form the warrant affidavit; certain statements in
the affidavit are knowing or reckless falsehoods that must be
excised from the warrant affidavit; with the offensive material
excised, the warrant affidavit does not establish probable cause
for a search; and evidence seized as a result of illegal searches
on February 18 and 19, 2004 must be suppressed.

I.   Informant Reliability and Credibility

In support of his argument that the warrant affidavit fails
to establish probable cause, Leen first contends that informants
referenced in the affidavit are not demonstrably reliable or
credible, and that the affidavit states no basis for the
informants' knowledge.  The government characterizes information
in the affidavit from confidential and unwitting informants as
non-essential information which only serves to bolster probable
cause.  Informant reliability and credibility and the basis for

10 - ORDER

informant knowledge are among the totality of circumstances relevant to the determination of whether the affidavit states probable cause to believe contraband or evidence of crime will be found in locations identified in the affidavit.   Illinois v. Gates, 462 U.S. 213, 238 (1983).   In determining whether the affidavit establishes probable cause, the court is mindful of the contents and omissions of the affidavit regarding informant credibility, reliability and knowledge.   The contents and omissions are discussed below.

CI1 and UI1 add relatively little information to the probable cause determination.   The affidavit discloses that Jenista's investigation corroborates information provided by CI1. Jenista discovered that a truck reported stolen by CI1 was in fact stolen, and was found at 4200 Highland Avenue.   Jenista further linked Huling to that address during a computer investigation.   Ex. C (Aff. at 3).   Following execution of the search warrant at 4200 Highland Avenue on February 3, 2004, Jenista confirmed Leen's identity with CI1 by having CI1 view a DMV photograph.   The affidavit states that CI1 has three misdemeanor convictions for crimes not involving veracity, and that CI1 passed a polygraph examination.

The affidavit does not state how CI2 acquired his or her knowledge.   Jenista confirmed CI2's information that Leen owns a 2000 green Toyota pickup truck.   Id. at 4.   CI2's information

11 - ORDER

that Leen is a significant marijuana manufacturer is corroborated by information provided by former JOINT Detective Raymond and unnamed JOINT detectives.  Id. at 1-2.  The affidavit does not state a particular basis for the knowledge of these detectives, however.  The affidavit states that CI2 has numerous misdemeanor convictions, one felony conviction, and no convictions for crimes of veracity.  CI2 sought to provide information in exchange for favorable treatment from the district attorney.  Jenista made no promises other than to relate CI2's cooperation to the district attorney.  CI2 failed to maintain contact with Jenista, and CI2 received no consideration for the information provided.  Id.

The basis of CI3's knowledge is UI2, and the affidavit contains no basis for UI2's knowledge.  The affidavit contains information corroborating UI2's information that the suspect property on Hitching Post Road had a looping driveway with north entrance blocked by a tree.  The affidavit further documents a reported burglary at 606 Hitching Post Road on December 30, 2002, more than 13 but less than 14 months prior to Jenista's February 8, 2004 contact with CI3.  CI3 had reported a law enforcement visit to the property 18 months to two years prior to the contact.  The affidavit also contains information Jenista learned from Cirina that Leen leased the premises beginning on November 27, 2000.  Leen showed Cirina a large metal shipping container in a cut out just to the west of the residence, and another smaller

12 - ORDER

container at the bottom of the roadway behind the residence.
Leen referred to his "ex-brother-in-law" to Cirina.  Jenista
knows Leen's former brother in law to be Huling.  Warrant Aff. at
15.  The warrant affidavit does not disclose the basis for
Jenista's knowledge that Huling is Leen's former brother in law.
Jenista avers that a criminal history check run on CI3 revealed
no criminal history.

II.  Curtilage Determination

     The determination of what constitutes curtilage is resolved
with particular reference to (1) the area's proximity to the
home, (2) whether the area is included within an enclosure
surrounding the home, (3) the nature of the uses to which the
area is put, and (4) the steps taken by the resident to protect
the area from observation by passers by.  United States v. Dunn,
480 U.S. 294, 301 (1987).  The central component of the inquiry
is whether the area "harbors intimate activity associated with
the sanctity of [the] home and the privacies of life."  Id.

     1.  First - Proximity to Home

     The court is not apprised of the precise distance of
locations within the parking area in front of the residence from
which officers made their observations.  These areas are close
enough to the residence that a finding of curtilage is not
precluded.  The distance form the back of the residence to the
entrance to the conex container at the bottom of the embankment

13 - ORDER

may be roughly 150 feet as the crow flies, or roughly 500 feet by road. See Gov't Ex. 3. One set of two ventilation pipes protrude from the ground a few feet from the deck on the rear of the residence. Gov't Ex. 7B. Jenista apparently saw these and another set of pipes from the north-south situated road down the embankment behind the residence. This location may be roughly 100 to 150 feet from the back of the residence, but is separated from the residence by a steep embankment. See Gov't Exs. 3, 7; Warrant Aff. at 12.

2. Second - Enclosure

There is no evidence of a fence or other enclosure around the parking area in front of the home, the roadway down the embankment, or the opening to the conex container. This factor is not dispositive, however, particularly in rural settings where the resident may have taken other measures to protect privacy. United States v. Depew, 8 F.3d 1424, 1427 (9th Cir. 1993) (citing to Dunn, 480 U.S. at 301, n.4).

3. Third - Uses

There is no evidence of how Leen used these areas. This distinguishes this case from Depew. Depew was a practicing nudist who went nude in the driveway area around his garage. Id. The law enforcement agent had no objective data indicating that Depew used his garage or adjacent driveway for illegal activity, rather than for those activities associated with the privacies of

14 - ORDER

domestic life.  Id.  In this case, Jenista had some knowledge of illegal activity on the premises before his February 18, 2004 visit.  Huling and McEntire co-owned the automotive business at 4200 Highland Avenue where a growing operation was discovered. Jenista linked 606 Hitching Post Road to Jamie McEntire using the JOINT computer.  An informant described the property and told Jenista that Huling was growing marijuana on Hitching Post Road.

4.  Fourth - Steps Taken to Prevent Observation

Someone posted "no trespassing" signs along the two driveways, felled a tree over the north driveway and placed a chain over the south driveway.  Gov't Exs. 4D, 5B & C.  On February 18, 2004, the chain did not function as a physical barrier to entry.  The posting of "no trespassing" signs shows an effort to protect inner areas of a parcel from observation. Depew, 8 F.3d at 1428.  The government's photographs indicate that the areas at issue are mostly obscured from view from the roadway.  It appears from the aerial photos that the house and adjacent driveway/parking area are bordered on all sides by trees, bordered by railroad tracks to the east, and bordered by a fence on the adjacent property to the south.  Gov't Exs. 2-4. These features suggest that this property may have been selected for its privacy, which is also relevant to the curtilage determination.  Depew, supra.

Based on the factors identified by the Court in Dunn, this

15 - ORDER

court finds that the parking area in front of the residence, the road down the embankment, and the area at the bottom of the embankment are open fields, and not curtilage.  The areas may be close enough to the residence so as not to preclude a curtilage determination, but they are not enclosed and are not ordinarily used for intimate activities.  Although the property may have been selected for privacy, and some effort was expended to protect privacy, there is no evidence that the areas at issue were used for intimate activities.  Jenista had knowledge of illegal activity on the premises.  As noted, the central inquiry of the curtilage determination is the nature of the uses of areas claimed to be curtilage.  Officers' trespass upon open fields does not violate the Fourth Amendment.  United States v. Oliver, 466 U.S. 170, 177 (1984).  The observations of officers in the parking area in front of the residence, on the road down the embankment, and at the bottom of the embankment, did not violate Leen's Fourth Amendment rights.

III.  Warrantless Entry of Residence and Conex Container

Warrantless searches and seizure inside the home are presumptively unreasonable, and generally justified only by exigent circumstances or emergency.  United States v. Martinez, 406 F.3d 1160, 1163-64 (9th Cir. 2005) (citing to Payton v. New York, 445 U.S. 573, 586 (1980)).

The government argues that officers entered the residence in

16 - ORDER

order to conduct a "protective sweep."  In his affidavit, Jenista

states that the reason for entry is to "clear and secure the

residence . . ."  Jenista testified that a pickup truck was

parked next to the residence and that he and Brown observed a

rottweiler barking inside the residence through glass panels next

to the front door.  Based on this evidence, Jenista believed that

persons may be present in the residence.  Jenista did not

articulate and the government does not explain why officer safety

concerns were served by clearing the residence on the afternoon

of February 18, 2004, rather than when the search warrant

issued.[1]  The case for exigent circumstances would be stronger if

the government provided this explanation.  See United States v.

McConney, 728 F.2d 1195, 1206 (9th Cir. 1984).  The government

does not assert suspect apprehension or prevention of the

destruction of evidence as justification for entry into the

residence.

    Jenista also testified that Valdez entered the conex

container at the bottom of the embankment as part of a

"protective sweep."  Whether this entry was lawful also presents

a close question.  See United States v. Pennington, 287 F.3d 739,

745 (8th Cir. 2002).

---

    [1]The court does not hold that the officers could not have
been justified in securing the premises from the inside.  Rather,
the court notes only that the government does not explain how
officer safety is furthered by the decision to clear the premises
before obtaining a warrant.

17 - ORDER

The legality of the warrantless entries into these structures is academic.  The court will not suppress evidence discovered as a result of these entries because the court finds by a preponderance of the evidence that officers would have inevitably entered these areas lawfully.  See United States v. Ramirez-Sandoval, 872 F.2d 1392, 1396 (9th Cir. 1989).  Jenista's investigation prior to the warrantless entries of these structures easily established probable cause to believe contraband or evidence of crime would be found inside.  A search warrant for these locations would have issued in any event. Entry into these structures did not taint any other evidence.

IV.  Seizure of House

Leen next argues that the nearly 20-hour seizure of the residence is unreasonable and unlawful in duration, and requires suppression of evidence.  The court finds the duration of the seizure reasonable under the circumstances.  Jenista testified to investigative activities reasonably accounting for the time he arrived at the station after departing the premises until 5:00PM, when he commenced work on the affidavit.[2]  Jenista worked on the affidavit until 2:15AM, and reasonably waited until morning to present it to a judicial officer.  See Segura v. United States,

_____

[2]The court is dismayed by Jenista's hearing testimony that he contacted Leen's bank on February 18, 2004 to ask that Leen's accounts be frozen, but nothing indicates that this impropriety consumed a significant amount of time.

18 - ORDER

468 U.S. 796, 810, 814 (1984) (finding 19-hour delay reasonable
based in part on officer's diligence and nighttime unavailability
of judicial officer).

V.   Leen's Request for Franks Hearing

     A defendant is entitled to a hearing to challenge the
sufficiency of an affidavit supporting a search warrant if he
makes a "substantial preliminary showing" that law enforcement
officers made a false statement or omission "knowingly and
intentionally, or with reckless disregard for the truth," and
that the statement or omission was "necessary to the finding of
probable cause." United States v. Martinez-Garcia, 397 F.3d
1205, 1214 (9th Cir. 2005) (quoting Franks v. Delaware, 438 U.S.
154, 155-56 (1978)).  As discussed below, Leen is not entitled to
a Franks hearing, yet he had one in conjunction with the hearing
on his motion to suppress evidence.  At this hearing, Leen's
attorney simply cross-examined Jenista.  Leen challenges the
following statements in the warrant affidavit.

     A.  Statements Re: Reimer and Purpose for 2/17/04 Visit

     I subsequently checked the police computer system for
     persons by the last name Reimer who resided at 606
     Hitching Post Road.  I located subject, Monte Jan
     Reimer (dob 8-14-68), who's address was listed as 606
     Hitching Post Road.  Reimer's local name-scan police
     record showed no arrests, warrants or jail bookings.

     On February 18, 2004 at approximately 11:36AM, Deputy
     Ryan Brown (currently assigned o JOINT) and I drove to
     the property at 606 Hitching Post Road, Grants Pass,
     Josephine County, Oregon, to ask Reimer about any
     current or old marijuana growing facilities on the

19 - ORDER

property.

Warrant Aff. at 7.

> I left Brown, Valdez and Souza at 606 Hitching Post
> Road and returned to the station to prepare this
> affidavit.  Coincidentally, dispatch subsequently
> called me to advise they were taking a call wherein
> subject Monte Reimer was requesting a deputy to stand
> by and keep the peace over a civil matter.

Warrant Aff. at 13.

Leen argues that Jenista knowingly, intentionally or with
reckless disregard for the truth misled the issuing judge into
believing that the purpose of the February 18, 2004 visit to 606
Hitching Post Road was to speak with Reimer, when in fact Jenista
had thoroughly investigated Reimer and knew that he no longer
lived at that address.  In support of this argument, Leen notes
that dispatch apparently knew to advise Jenista that Reimer was
on the phone.  Leen also notes that Jenista is trained in
investigation, and that the statement that Reimer's "address was
listed as 606 Hitching Post Road," may be technically true, but
misled the issuing judge into believing that Reimer still lived
at the property.  Leen does not explain, and the court does not
understand, why Jenista's purpose for visiting the property on
February 18, 2004 affects the determination of whether the
affidavit states probable cause.  Were these statements excised,
the affidavit would still state probable cause to search the
residence and premises.  Leen presents nothing beyond speculation
to indicate that Jenista's statement regarding Reimer's listed

20 - ORDER

address was misleading.

    B.   Statement Re: Property Boundaries or Enclosures

    There appeared to be no fences or posted boundaries around the property or the residence other than the posting on the north driveway.

Warrant Aff. at 8.

    Leen argues that this statement is false, as the south side of the property is completely fenced, there is no road access from the back of the property, a tree was felled across the north driveway, a chain was erected across the south driveway, impenetrable rises and brush repel access except via the driveways, and that "no trespassing" signs are posted.  At this point in the affidavit, Jenista simply described what he saw while entering the property.  The affidavit discloses all the facts noted by Leen, save the "impenetrability" of natural features and the fence on the south side of the property. Jenista testified that he did not see the fence on the south property boundary, which encloses the neighboring parcel.  The government's photos and video show natural boundaries of brush and rise which appear penetrable on foot by able-bodied persons. Jenista testified that the property could be accessed on foot from the railroad tracks.  The challenged statement is not intentionally or recklessly false.  Nor would removal of the statement affect the probable cause determination.

    The warrant affidavit establishes probable cause to believe

21 - ORDER

that contraband or evidence of crime will be found in the
locations identified in the affidavit.  Further, with the
observations of officers made inside the residence and in the
conex container excised from the affidavit, the affidavit, as
modified, continues to establish probable cause to believe that
contraband or evidence of crime will be found in the locations
identified therein.

<u>Conclusion</u>

Based on the foregoing, defendant Leen's motion to suppress
evidence and controvert [#18], in which defendant Huling joined,
is denied as to all defendants.

IT IS SO ORDERED.

DATED this __26th__ day of April, 2006.

United States District Judge